## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ASARCO, LLC,<br><br>        Plaintiff,<br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br>and UNION PACIFIC CORPORATION,<br><br>        Defendants. | Case No. 2:12-cv-00283-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in the above entitled matter are the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and a related Motion to Strike. The parties have filed their responsive briefing and the matter is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2012, Plaintiff, ASARCO LLC, filed a Complaint in this matter seeking contribution under § 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* from Defendants

Union Pacific Railroad Company and Union Pacific Railroad Corporation (collectively referred to as "Union Pacific"). (Dkt. 1.) Union Pacific filed a Motion to Dismiss the Complaint for failure to state a claim. (Dkt. 15.)  Thereafter, ASARCO filed its First Amended Complaint ("FAC") to which Union Pacific filed a new Motion to Dismiss and a Motion to Strike. (Dkt. 24, 31, 44.) The parties have fully briefed the Motion to Dismiss and the matter is now ripe for the Court's consideration.

## STANDARD OF LAW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept

MEMORANDUM DECISION AND ORDER  - 2

as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

Union Pacific's Motion to Dismiss argues the claims in the Amended Complaint should be dismissed because they are barred by: 1) prior settlement agreements, 2) *res judicata*, 3) judicial estoppel, 4) the statute of limitations, and 5) the fact that ASARCO has no contribution rights against Union Pacific. (Dkt. 32.) ASARCO disputes each of these arguments and maintains its FAC has properly stated a claim for relief sufficient to overcome the Motion to Dismiss. (Dkt. 40.) The Court finds as follows.

### 1. Statute of Limitations

Union Pacific raises two arguments concerning the timeliness of the claims made in this case: 1) violation of CERCLA's statute of limitations and 2) the new claims in the FAC do not relate back to those made in the initial Complaint. (Dkt. 32.) ASARCO maintains its claims are timely. (Dkt. 41.) Because these arguments are threshold considerations, the Court addresses them first.

### A.    CERCLA § 113(g)(3)(B)

The initial Complaint filed in this case, Union Pacific asserts, was outside of the three-year limitations period prescribed in CERCLA § 113(g)(3)(B), which states: "No action for contribution for any response costs or damages may be commenced more than 3 years after—(B) the date of ... entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). In calculating the three year time period, Union Pacific argues the day the 2009 CDA Settlement was entered, June 5, 2009, is counted as the first day. (Dkt. 31 at 26.) Therefore, the three years expired on June 4, 2012 and the initial Complaint was untimely as it was not filed in this case until June 5, 2012. (Dkt. 1.)

This is not the first time this argument has been raised. *See ASARCO, LLC v. Hela Min. Co.*, Case No. CV-12-0381-LRS, 2012 WL 5929962, *3 (E.D. Wash. Nov. 27, 2012). The Court finds the appropriate calculation for determining the dates for the three year limitations period is that used in Federal Rule of Civil Procedure 6(a). *Id.* Under that calculation, the initial Complaint filed in this case was timely as it was filed three years to the day after the CDA Settlement was entered.

### B.    Related Back

Union Pacific argues the "new" claims in the FAC, filed on July 23, 2012, should be deemed untimely because ASARCO's new contribution claims adding the Jack Waite Mine and the North Fork were not encompassed in the original Complaint. As such, it contends, the new claims do not relate back to the date of the originally filed Complaint and, therefore, are untimely under CERCLA's statute of limitations. (Dkt. 32 at 24.)

MEMORANDUM DECISION AND ORDER  - 4

Paragraph 1 of the Complaint generally describes the geographic area:

> As used in this Complaint, the "Coeur d'Alene Site" (or "Site") consists of a 1,500-square mile area located in northern Idaho and eastern Washington. The Site includes the Bunker Hill mining and smelting complex and a 21-square mile area around that complex (known as the "Box"). The Site includes various mines and adjacent streams along the South Fork of the Coeur d'Alene River ("SFCDR") and its tributaries (referred to as the "Upper Basin"), and the Coeur d'Alene River corridor, adjacent flood plains, downstream water bodies (including Coeur d'Alene Lake), tributaries and fill areas (referred to as the "Lower Basin").

(Dkt. 1 at ¶ 1.) In contrast, Paragraph 1 of the FAC states:

> As used in this Complaint, the "Coeur d'Alene Site" (or "Site") consists of a 1,500-square mile area located in northern Idaho and eastern Washington. The Site includes the Bunker Hill mining and smelting complex and a 21-square mile area around that complex (known as the "Box"). The Site includes various mines and mining-contaminated areas in the Coeur d'Alene River Basin including, without limitation, along the North Fork and the South Fork of the Coeur d'Alene River (respectively, "North Fork" and "South Fork") and their tributaries, and the main stem Coeur d'Alene River corridor, adjacent floodplains, downstream water bodies (including Coeur d'Alene Lake), tributaries and fill areas.

(Dkt. 24 at ¶ 1.) Both the Complaint and FAC go on in other paragraphs to further describe the geographic area site as well as the factual background of the clean up efforts and litigation that have gone on in regards to the area. (Dkt. 1 at ¶¶ 21-39) (Dkt. 24 at ¶¶ 22-39.) These paragraphs are examples of where ASARCO made changes in the FAC so as to more specifically incorporate the North Fork of the Coeur d'Alene River areas in its contribution claim.

MEMORANDUM DECISION AND ORDER - 5

Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P.  15(c)(1)(B). "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989) (finding that amended complaint related back where amended complaint added new theory of recovery based on facts alleged in original complaint)). "The requirement that the allegations in the amended complaint arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading." *Id.* at 1133 n. 9 (quoting *Martell*, 872 F.2d at 326).

Having reviewed both the Complaint and the FAC, the Court finds the claims raised in the FAC relate back to those raised in the Complaint. The claims arise out of the same conduct and share a common core of operative facts. As the Court will discuss more below, the Coeur d'Alene Basin geographical area is large and encompasses both the North and South Forks of the Coeur d'Alene River. That the FAC more specifically describes the claims relating to the Jack Waite Mine and North Fork does not change the nature of the allegations and/or the contribution claim ASARCO has raised in this case.

2.    **Asarco's Contribution Claim**

This Court has a unique and comprehensive understanding of the historical factual and procedural underpinnings of this case, as it has presided over the consolidated cases brought by the Coeur d'Alene Tribe and the United States against ASARCO concerning the recovery of damages and costs related to the natural resource damages caused by the historical mining activities in the area. *See Coeur d'Alene Tribe v. Asarco, Inc*., Case Nos. CV91-0342-N-EJL and *United States, et al. v. Asarco, Inc., et al.*, CV96-0122-N-EJL. In those cases, following a lengthy hearing, this Court issued an Order on September 3, 2003 finding ASARCO to be liable for twenty-two percent of the costs of CERCLA remediation at the Coeur d'Alene Site. *See Coeur d'Alene Tribe v. Asarco, Inc.*, 280 F.Supp.2d 1094 (D. Idaho 2003).

Thereafter, on August 9, 2005, ASARCO filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas. *See In re Asarco LLC, et al.*, Case No. 05-21207, United States Bankruptcy Court, Southern District of Texas, Corpus Christi Division. In that case, ASARCO sought approval from the Bankruptcy Court of a global type settlement of all of ASARCO's environmental liabilities, including those related to the Coeur d'Alene Basin. (Dkt. 15-2, Ex. A.) Under the terms of the settlement, ASARCO would pay approximately $482 million to resolve its CERCLA liability at the Coeur d'Alene Basin site ("CDA Settlement"). (Dkt. 24 at Ex. 1.) The settlement was approved by the Bankruptcy Court. (Dkt. 15-5, Ex. C.) A plan of reorganization of ASARCO was also approved which provided the

MEMORANDUM DECISION AND ORDER  - 7

funding for the payout of that settlement. (Dkt. 25-1, Ex. 1.) In December 2009, ASARCO made $482.143 million in payments under the settlement of its environmental liability for damages caused in the Coeur d'Alene Basin.

ASARCO has now filed this case seeking to recover contribution costs from Union Pacific for the environmental damages it alleges Union Pacific's activities caused in the Coeur d'Alene Basin. (Dkt. 24.) Union Pacific counters that ASARCO's contribution claim are barred by virtue of the settlement agreement entered into between these two parties in ASARCO's bankruptcy proceeding. (Dkt. 32 at 4.) In response, ASARCO asserts its contribution claim raised here were not released in any prior settlement agreement. (Dkt. 40.) The Court finds as follows.

Union Pacific was a creditor in ASARCO's 2005 bankruptcy proceeding seeking to recover its response costs related to the removal of contaminants from certain properties in Utah, Colorado, Washington, and "the Coeur d'Alene Site in Idaho," collectively referred to as the "Remaining Sites." (Dkt. 15-12, Ex. I at p. 2.) Union Pacific filed Proofs of Claim against ASARCO in the bankruptcy case seeking "contribution and indemnity for past and future costs of response under CERCLA incurred by [Union Pacific] at the Remaining Sites...." (Dkt. 15-12, Ex. I at p. 3.) ASARCO disputed those claims. (Dkt. 15-12, Ex. I at p. 3.)  In September of 2008, the parties reached a settlement agreement regarding past environmental response costs and other commercial costs ("Bankruptcy Settlement"). (Dkt. 15-12, Ex. I.)

MEMORANDUM DECISION AND ORDER - 8

Union Pacific's Motion to Dismiss filed in this case argues, in part, that ASARCO's contribution claim here is barred by the Bankruptcy Settlement. In response, ASARCO argues it "is not precluded from bringing this action as a result of the Bankruptcy Case." (Dkt. 40 at 2.) ASARCO maintains it did not release Union Pacific from its CERCLA contribution liability in the Bankruptcy Settlement. (Dkt. 40 at 2.) Union Pacific counters that the plain language of the Bankruptcy Settlement bars all of ASARCO's claims. (Dkt. 41 at 2.)

> The Bankruptcy Settlement states:
>
> WHEREAS, this Settlement Agreement is intended to serve as a comprehensive settlement of all the claims by [Union Pacific] or claims which [Union Pacific] could have filed against ASARCO with respect to Past Response Costs, Remaining Site Costs, and the Freight Charges;
> ....

(Dkt. 15-12, Ex. I at p. 4.) Any claims for "Future Costs" were specifically excluded from the agreement. Under the terms of the agreement Union Pacific was allowed a general unsecured claim in the total amount of $4,157,572.75. (Dkt. 15-12, Ex. I at p. 5.) That total amount was allocated between the freight charges and properties other than the Remaining Sites. As to the Remaining Sites, the agreement states that claim "equals zero and Union Pacific will withdraw its claims related to such sites." (Dkt. 15-12, Ex. I at p. 6.) The written agreement also contains a section entitled "Mutual Releases" which reads as follows:

MEMORANDUM DECISION AND ORDER  - 9

## V. MUTUAL RELEASES

4.      UP[1] agrees for itself, and on behalf of its officers, directors, employees, and trustees to hereby release, remise, and discharge ASARCO and its respective successors, assigns, officers, directors, employees, and trustees from any and all damages, losses, expenses, costs, liabilities, claims, demands, suits, causes of action, and complaints, of any kind, character or description, in law or in equity, whether known or unknown, arising out of or in any way connected with: (1) the Freight Charges as of the Petition Date; (2) Past Response Costs at Wallace Spur, Wallace Branch, and the OLS; and (3) Remaining Sites Costs. All claims and rights related to Future Costs are specifically excluded from and not released by this paragraph.

5.      ASARCO agrees for itself, and on behalf of its officers, directors, employees, and trustees to hereby release, remise, and discharge UP and its respective successors, assigns, members, officers, directors, employees, shareholders, equity owners, and trustees from any and all damages, losses, expenses, costs, liabilities, claims, demands, suits, causes of action, and complaints, of any kind, character or description, in law or in equity, whether known or unknown, arising out of or in any way connected with: (1) the Freight Charges as of the Petition Date; (2) Past Response Costs at Wallace Spur, Wallace Branch, and the OLS; and (3) Remaining Sites Costs. All claims and rights related to Future Costs are specifically excluded from and not released by this paragraph.

6.      This Settlement Agreement in no way impairs the scope and effect of ASARCO's discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any claims that are not addressed by this Settlement Agreement.

7.      The mutual releases contained in Paragraphs 4 and 5 of this Settlement Agreement extend only to ASARCO, UP, and the other persons described in Paragraphs 4 and 5 above and do not extend to any other person (as that term is defined in 11

---

[1] Union Pacific is referred to as "UP" in the Bankruptcy Settlement. (Dkt. 15-12, Ex. I.)

MEMORANDUM DECISION AND ORDER  - 10

U.S.C. §101). Nothing in this Agreement is intended as a mutual release from liability for any person or entity other than ASARCO, UP, and the persons described in Paragraphs 4 and 5. UP and ASARCO expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which UP or ASARCO may have against all other persons, firms, bankruptcy estates, trusts, corporations, or entities for any matter arising at or relating in any manner to: (1) the Freight Charges as of the Petition Date; (2) Past Response Costs at Wallace Spur, Wallace Branch, and the OLS; and (3) Remaining Sites Costs.

(Dkt. 15-12, Ex. I at p. 6-7.)

ASARCO maintains it did not release its claim in the Bankruptcy Settlement. (Dkt. 40 at 13.) Instead, ASARCO contends, the Bankruptcy Settlement released and/or settled the claims Union Pacific could have filed against ASARCO, not the claim made in this case by ASARCO against Union Pacific. (Dkt. 40 at 13-14.) In support of its position, ASARCO points to: the Joint Motion for Order Approving Compromise and Settlement and the Bankruptcy Settlement. (Dkt. 40 at 14.) The claims at issue in Paragraph 5 of the Joint Motion, ASARCO argues, are for contribution and indemnity costs "incurred by Union Pacific." (Dkt. 40, Ex. 1 at ¶ 5) (emphasis added.) Likewise, Paragraphs 7 and 8 refer to "[Union Pacific]'s claims". (Dkt. 40, Ex. 1 at ¶¶ 7, 8.) ASARCO similarly points to Paragraph 3 of the Bankruptcy Settlement which states "In settlement and satisfaction of all claims and causes of action of Union Pacific" and then it lists the particular claims allowed. (Dkt. 15-12, Ex. I at p. 5) (emphasis added.) ASARCO argues the definitions used in the Bankruptcy Settlement also refer to CERCLA response costs "incurred by [Union Pacific]."

MEMORANDUM DECISION AND ORDER - 11

(Dkt. 40 at 14.) Based on these phrases, ASARCO asserts the Bankruptcy Settlement did not release Union Pacific from claim by ASARCO for recovery of its response costs.

Union Pacific counters arguing the plain language of the Bankruptcy Settlement "included something very important to Union Pacific: a broad reciprocal release by Asarco of any and all claims 'connected with' Union Pacific's release claims against Asarco. Asarco cannot write this explicit release out of the settlement agreement." (Dkt. 41 at 5) (emphasis in original.) The Court agrees. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1261 (9th Cir. 2010) ("Interpretation of a settlement agreement is a question of law....").

The Mutual Releases section of the Bankruptcy Settlement clearly and unequivocally released as to both parties "any and all...claims,...whether known or unknown, arising out of or in any way connected with: ... (3) Remaining Sites Costs." (Dkt. 15-12, Ex. I at p. 6.) The "Remaining Sites" is defined to include, among others, the "Coeur d'Alene Site in Idaho." (Dkt. 15-12, Ex. I at p. 2.) Paragraph 7 of the Bankruptcy Settlement makes clear that the Mutual Releases' paragraphs apply to both ASARCO and Union Pacific. (Dkt. 15-12, Ex. I at ¶ 7.) The plain reading of this language leads to only one conclusion, that Paragraphs 4 and 5 of the Bankruptcy Settlement are exactly what they say they are, mutual releases. As applicable here, the claims subject to the parties' agreed upon mutual releases include "any and all claims," whether "known or unknown," "arising out of or are in anyway connected with" the Coeur d'Alene Site in Idaho. (Dkt. 15-12, Ex. I.) Were it to be read as ASARCO has suggested, limiting the releases to only Union Pacific's claims, would be for

MEMORANDUM DECISION AND ORDER - 12

the releases to be anything but mutual. Moreover, had the parties intended differently they clearly knew how to exclude particular claims; the Bankruptcy Settlement contains specific and express exclusions for claims and rights relating to Future Costs. (Dkt. 15-12, Ex. I at ¶¶ 4, 5, 8.)

Further, the Court has reviewed the claim raised in the FAC here and concludes that ASARCO's claim for contribution raised in this case is connected with the Coeur d'Alene Site in Idaho as that term is used in the Bankruptcy Settlement. (Dkt. 24.) As stated previously, this Court is acutely aware of the historical underpinnings related to the CERCLA claims of this area as well as the previous litigation involving the Coeur d'Alene Basin. The claim in the FAC is made as to the "Coeur d'Alene Site" which the FAC defines to include a vast area consisting of 1,500 square miles in northern Idaho and eastern Washington. (Dkt. 24 at ¶ 1.) The geographical area and procedural history of the claim is further defined in Paragraphs 22-39. (Dkt. 24.) Given the scope of the definitions used in the FAC and the plain language of the Bankruptcy Settlement, it is clear that the claim raised in the FAC is precluded by the mutual release language of the Bankruptcy Settlement.

ASARCO also argues the claim in the FAC was not released in the Bankruptcy Settlement because it is premised on the CDA Settlement, which had not been finalized or funded by the time the Bankruptcy Settlement had been approved. (Dkt. 40 at 14.) Thus, ASARCO argues, the claim raised here did not exist at the time of the Bankruptcy Settlement. Union Pacific counters that the finalization of the CDA Settlement did not "trigger accrual of Asarco's CDA Basin contribution claims against Union Pacific. Rather,

the CERCLA contribution claims asserted in this case came into existence <u>as soon as Asarco was the subject of any civil action relating to CDA contamination</u>.... The contribution claims Asarco now asserts against Union Pacific existed for years before either the Bankruptcy Court Settlement or the CDA Basin Settlement were approved." (Dkt. 41 at 3-4) (emphasis in original.)

It is true that the Bankruptcy Settlement (Dkt. 33-3, Ex. 3) was approved by the Bankruptcy Court on October 14, 2008, prior to the CDA Settlement being signed on March 13, 2009 (Dkt. 15-7, Ex. 7). However, the claim in the FAC is made pursuant to CERCLA's § 113(f) which states:

> Any person may seek contribution from any other person who is liable or potentially liable under section [1]07(a) of this title, <u>during or following any civil action</u> under section [1]06 of this title or under section [1]07(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section [1]06 of this title or section [1]07 of this title.

42 U.S.C. § 9613(f) (emphasis added). Based on this language in § 113(f), Union Pacific argues ASARCO's contribution claim against it existed "as soon as ASARCO was the subject of any civil action relating to CDA contamination." (Dkt. 41 at 3.)

In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, (2004), the Supreme Court construed the term "during or following any civil action" found in § 113(f)

MEMORANDUM DECISION AND ORDER - 14

to mean that a contribution claim under § 113(f) is authorized only "during or following" a civil action brought under § 106 or § 107. *Cooper*, 543 U.S. at 168. Thus, a party who had not been sued under § 107(a), could not proceed under § 113(f). *See Citrous v. Gross-Jowett Co. of Northern Cal.*, 523 F.3d 924, 934 (9th Cir. 2008). The Supreme Court later held that § 113(f)(1) "permits suit before or after the establishment of common liability." *United States v. Atlantic Research Corp.*, 551 U.S. 128,  138-39 (2007) (finding § 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107).

Here, ASARCO has long been subject to CERCLA suits concerning the Coeur d'Alene Basin. Civil actions against ASARCO for contamination in the Coeur d'Alene Basin commenced as far back as 1991 when the Coeur d'Alene Tribe filed its case in this Court against ASARCO and various other mining companies. *See Coeur d'Alene Tribe v. ASARCO, et al.*, Case No. 91-0342-N-HLR and (Dkt. 24 at ¶ 30.) The United States later brought its § 107(a) action against ASARCO in 1996. *See United States v. ASARCO, et al.*, Case No. 96-01220N-EJL and (Dkt. 24 at ¶ 31.) Those cases were consolidated and, in 2003, this Court issued its Order finding ASARCO twenty-two percent liable for the costs of CERCLA remediation at the Coeur d'Alene Basin Site. *See Coeur d'Alene Tribe v. Asarco, Inc*., 280 F.Supp.2d 1094 (D. Idaho 2003.) Thus, ASARCO has had a § 113(f) contribution claim against Union Pacific for some time now. *See Atlantic Research Corp.*, 551 U.S. at 138-39.

Regardless of the timing of when ASARCO's § 113(f) contribution claim became ripe, the Court finds ASARCO's contribution claim was well known to both parties

MEMORANDUM DECISION AND ORDER  - 15

prior to and at the time of their negotiations of the Bankruptcy Settlement. Both ASARCO and Union Pacific were parties in the consolidated cases filed in this Court. In the Bankruptcy Court proceedings, ASARCO ultimately sought approval of five comprehensive settlement agreements that were negotiated on a "global basis" so as to resolve the approximately $3.5 billion of environmental liability claims filed against ASARCO in its bankruptcy case. (Dkt. 15-2, Ex. A at 1.) One of these comprehensive settlement agreements is the Bankruptcy Settlement at issue here between ASARCO and Union Pacific. (Dkt. 15-12.) With ASARCO seeking approval of such comprehensive type settlements, it would be unrealistic to believe that ASARCO would negotiate a settlement whereby it would pay off all of its liabilities and then have to file separate actions to recoup offsets and/or liabilities owing to it from some of the same parties who participated in the comprehensive settlement negotiations. As such, the Court finds ASARCO's argument that its contribution claim did not exist, or had not yet arisen, at the time of the Bankruptcy Settlement is contrary to the clear evidence in the record.

### 3.    Conclusion

The Court has reviewed the record in this matter in light of the parties arguments raised in their briefing as well as the relevant materials provided from the related Bankruptcy Court case. Having done so, the Court finds ASARCO's claims raised in the FAC are barred by the terms of the Bankruptcy Settlement entered into between ASARCO and Union Pacific. Because the Court has determined that the Bankruptcy Settlement precludes ASARCO's claims, the Court need not address Union Pacific's arguments

MEMORANDUM DECISION AND ORDER  - 16

concerning *res judicata*, judicial estoppel, contribution claim rights, or Union Pacific's prior Consent Decrees.

Union Pacific has also filed a Motion to Strike the supplemental authority filed by ASARCO. (Dkt. 44.) The filings, Union Pacific asserts, were improperly filed, are not binding precedent on this Court, are based on different factual circumstances and legal arguments, and are not pertinent and significant authority for which supplementation is appropriate. (Dkt. 44.) The Court finds the Motion is moot. (Dkt. 44.) Prior to the supplemental materials being filed, this Court had discovered and reviewed those orders in its own research on this case.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. 31) is **GRANTED**. This case is HEREBY DISMISSED IN ITS ENTIRETY.

IT IS FURTHER ORDERED that the Defendants' Motion to Strike (Dkt. 44) is **MOOT**.

DATED:  **March 28, 2013**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM DECISION AND ORDER - 17