UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ASARCO LLC.,<br><br>                         Plaintiff,<br><br>      v.<br><br>UNION PACIFIC RAILROAD<br>COMPANY and UNION PACIFIC<br>CORPORATION,<br><br>                       Defendants. | Case No. 1:12-CV-00283-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Expert. (Dkt. 86.)[1] The matter has been fully briefed and is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

---

[1] There are other motions currently pending that will be decided separately in due course.

**MEMORANDUM DECISION AND ORDER- 1**

## FACTUAL AND PROCEDURAL BACKGROUND

Both sides in this action contacted Fredric L. Quivik, Ph.D. to inquire about obtaining his services as an expert in this case. Defendants initially contacted Dr. Quivik on December 3, 2014. (Dkt. 88, Quivik Dec. at ¶ 4 and McIntosh Dec. at ¶ 2.) Defendants attempted to contact Dr. Quivik again on February 4, 2015 to "finalize the agreement" and retain him as their expert. (Dkt. 88 at 3) (Dkt. 88, Quivik Dec. at ¶ 5 and McIntosh Dec. at ¶ 4.) Because they were unable to reach Dr. Quivik on his office telephone on February 4, 2015, defense counsel left a voice mail message for him and followed up with an email sent on February 5, 2015.

Counsel for Plaintiff contacted Dr. Quivik by telephone at his home later in the evening on February 4, 2015 and spoke briefly with him by telephone to schedule a time to discuss the possibility of retaining him as its expert witness in this case. (Dkt. 87, Brys Dec. at ¶ 2) (Dkt. 88, Quivik Dec. at ¶ 6.) Plaintiff's counsel followed up this conversation with an email. (Dkt. 87, Ex. 1.) The following day, on February 5, 2015, Dr. Quivik and Plaintiff's counsel spoke on the telephone for less than an hour. (Dkt. 88, Quivik Dec. at ¶ 8.) The parties' understandings of the February 5, 2015 conversation is disputed. (Dkt. 87, Brys Dec. at ¶ 3) (Dkt. 88, Quivik Dec. at ¶¶ 7-10.)

On February 6, 2015, Dr. Quivik retrieved the voicemail from defense counsel that had been left on his office phone on February 4, 2015. (Dkt. 88, Quivik Dec. at ¶ 11.) He then returned defense counsel's telephone call and scheduled a conference call for February 9, 2015. (Dkt. 88, McIntosh Dec. at ¶ 4.) Following that conference call, defense counsel

MEMORANDUM DECISION AND ORDER- 2

provided a written contract to Dr. Quivik to retain him as an expert in this matter. Plaintiff's counsel also emailed a proposed contract to Dr. Quivik on February 9, 2015. (Dkt. 87, Brys Dec. at ¶ 4) (Dkt. 88, Quivik Dec. at ¶ 12.) Upon receipt of Plaintiff's February 9th email, Dr. Quivik telephoned Plaintiff's counsel to inform them that he had already contracted to serve as an expert for the Defendants. On February 10, 2015, Dr. Quivik and Defendants executed the contract. (Dkt. 88, Ex. A-2.) Thereafter, counsel exchanged letters concerning their dispute over Dr. Quivik's suitability to serve as an expert in this case. The parties have been unable to resolve this dispute and, as a result, Plaintiff filed the instant Motion which this Court now takes up.

## STANDARD OF LAW

Federal courts have the inherent power to disqualify an expert witness in order to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system. *Hewlett-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Disqualification, however, is a drastic measure that should be rarely employed after evaluating several considerations. *Id.* Where, as here, disqualification of an expert is sought based on a prior relationship with an adversary, courts employ a two-step inquiry where disqualification is warranted "if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Id.* at 1093 (citations omitted). "[I]f only one of the two factors is present, disqualification likely is inappropriate."

MEMORANDUM DECISION AND ORDER- 3

*Id.* The party seeking disqualification bears the burden of establishing that both elements of the disqualification test have been established." *Stencel v. Fairchild Corp.*, 174 F.Supp.2d 1080, 1083 (C.D. Cal. 2001). In addition to these two factors, courts also consider other policy factors in determining whether disqualification would be fair to the affected party and would promote the integrity of the legal process. *Hewlett-Packard*, 330 F.Supp.2d at 1093. Applying these principles here, the Court finds as follows.

## DISCUSSION

### 1)      Existence of a Confidential Relationship

At the first step in the inquiry, the party seeking disqualification of an expert witness must demonstrate that it was objectively reasonable for it to believe a confidential relationship existed with the expert. *Hewlett-Packard*, 330 F.Supp.2d at 1093 (citations omitted). Thus, the Plaintiff here must show "that it was reasonable for it to believe that a confidential relationship existed and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate." *Id.* In evaluating the reasonableness of a party's assumption, courts consider several factors including:

> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.

*Stencel*, 174 F.Supp.2d at 1083 (citation omitted). Other factors that may weigh either for or

**MEMORANDUM DECISION AND ORDER- 4**

against disqualification include:

> whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party.

*Hewlett–Packard*, 330 F.Supp.2d at 1093.

Plaintiff's counsel argues it was reasonable to have expected that it had formed a confidential relationship with Dr. Quivik. (Dkt. 86 at 3-4.) Defendants deny this claim. (Dkt. 88 at 7.) Having reviewed the record herein, the Court finds the Plaintiff has failed to show the existence of a confidential relationship.

There were a series of communications between counsel for Plaintiff and Dr. Quivik that happened between February 4, 2015 and February 9, 2015. The first two of these communications were a February 4, 2015 telephone call and an email. Both of these February 4, 2015 contacts were brief and merely for the purpose of arranging a time to discuss the possibility of Dr. Quivik serving as Plaintiff's expert in this case. (Dkt. 87, Brys Dec. at ¶ 2 and Ex. 1.) Neither of these communications formed the basis for a confidential relationship.

The parties contest the nature and content of the next communication; a February 5, 2015 telephone call between Plaintiff's counsel and Dr. Quivik. Plaintiff's counsel represents that during this call, Dr. Quivik stated he had been contacted by the defense but had not yet been retained and he disclosed his hourly rates. (Dkt. 87, Brys Dec. at ¶ 3.) Plaintiff's counsel does not provide any specifics concerning the substance of the February 5, 2015

**MEMORANDUM DECISION AND ORDER- 5**

phone call and generally concludes that:

> During our conversation, I considered Plaintiff to have retained Dr. Quivik, and therefore disclosed my firm's thoughts, mental impressions, and concerns about various aspects of the case, including the identity of Plaintiff's other retained experts and the types of services they were performing on behalf of Plaintiff.

(Dkt. 87, Brys Dec. at ¶ 3.)

Dr. Quivik states the February 5th telephone call with Plaintiff's counsel "did not last more than an hour and focused primarily on my qualifications, including my experience in the Coeur d'Alene Basin..., my prior testimony..., and my understanding of the history of the CDA Basin." (Dkt. 88, Quivik Dec. at ¶¶ 7-8.) He goes on to acknowledge that "I understood that the purpose of the interview was for Asarco to make a determination about whether to engage me as an expert in the Litigation." (Dkt. 88, Quivik Dec. at ¶ 7.) Dr. Quivik does not dispute that during this conversation he disclosed his fees, stated he would be willing to consider serving as an expert for Asarco if a contract to do so was presented to him, and that Plaintiff's counsel "indicated that she would like to engage me as an expert." (Dkt. 88, Quivik Dec. at ¶¶ 8-10.) At that time, however, Dr. Quivik did not know whether Plaintiff's counsel had the authority to engage him and he believed that she needed to talk to others before Asarco would decide whether to retain his services. (Dkt. 88, Quivik Dec. at ¶ 10.)

Dr. Quivik acknowledges that Plaintiff's counsel discussed the general circumstances of the litigation and advised that she had obtained his name from Dan Gallacher, a historian in Missoula, Montana but that she did not otherwise identify any other person who might be working as an expert for Plaintiff in this case. (Dkt. 88, Quivik Dec. at ¶¶ 8-9.) However, Dr.

**MEMORANDUM DECISION AND ORDER- 6**

Quivik denies that Plaintiff's counsel talked about any confidential information, provided any information in confidence or represent that their conversation was confidential, provided any case documents to him, or otherwise disclose any of Plaintiff's litigation strategy or thoughts/mental impressions of the case. (Dkt. 88, Quivik Dec. at ¶¶ 8-10.)

Having reviewed the arguments of the parties and the supporting materials, the Court finds the February 5, 2015 phone call between Dr. Quivik and counsel for Plaintiff did not give rise to a confidential relationship. The substance and purpose of the phone call was for the purpose of determining whether Dr. Quivik would be useful for Plaintiff to retain as an expert, his availability, and the existence of any conflict. The fact that Dr. Quivik knew Plaintiff's counsel had contacted and was talking with him for the purpose of possibly retaining him as an expert in this matter does not show that a confidential relationship had been formed. This was clearly an initial/preliminary conversation engaged in for the purpose of determining whether to retain Dr. Quivik. Moreover, the content of the conversation appears to have been consistent with such a preliminary discussion; not one that gave rise to a confidential relationship.

Further, Plaintiff has not shown that it reasonably believed it had retained Dr. Quivik or otherwise formed a confidential relationship. The Declaration of Plaintiff's counsel does not state that she had secured an agreement from Dr. Quivik that he would serve as their expert. Instead, it only generally concludes that she "considered Plaintiff to have retained Dr. Quivik...." (Dkt. 87, Brys Dec. at ¶ 3.) This general and conclusory statement is rebutted by Dr. Quivik's Declaration which acknowledges that Plaintiff's counsel "indicated she would

**MEMORANDUM DECISION AND ORDER- 7**

like to engage him as an expert" and he agreed to consider a contract were one presented to him but that no such relationship had been finalized. (Dkt. 88, Quivik Dec. at ¶ 10.)

While the existence or absence of a contract between the parties is not determinative, here the other circumstances of the communications do not indicate that the conversation between Dr. Quivik and Plaintiff's counsel was confidential. *In re Incretin Mimetics Products Liability Litigation*, MDL Case No. 13md2452 AJB (MDD), 2015 WL 1499167, at *4 (S.D. Cal. April 1, 2015) (citing *Stencel*, 174 F.Supp.2d at 1083) ("The emphasis in evaluating whether a confidential relationship existed is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence.") Plaintiff's counsel never told Dr. Quivik that she was providing information in confidence or that he was not to discuss the contents of their conversations with anyone else. (Dkt. 88, Quivik Dec. at ¶ 9.)

The Court finds the generalized and conclusory statement by Plaintiff's counsel fail to support a finding that a confidential relationship had been formed during the February 5, 2015 phone call. The call lasted less than an hour. The purpose of this call was for Plaintiff to determine whether to hire Dr. Quivik. Such a discussion necessarily would require exploring his qualifications and experience and some exchange of some information about the case but Plaintiff's generalized and conclusory arguments have not shown that there was an expectation of confidentiality that arose during the discussion. Dr. Quivik's Declaration demonstrate that no such confidential relationship was formed given no agreement had been reached and Plaintiff's counsel had not stated that her discussion with him was in confidence.

**MEMORANDUM DECISION AND ORDER- 8**

The final communication occurred on February 9, 2015 when Plaintiff's counsel sent Dr. Quivik an email and proposed contract asking to "confirm his agreement to be retained" as an expert for Plaintiff. (Dkt. 87, Brys Dec. at ¶ 4) (Dkt. 88, Quivik Dec. at ¶ 12.) Upon receiving this email, Dr. Quivik called Plaintiff's counsel and told her that he had contracted to serve as an expert for the defense. (Dkt. 88, Quivik Dec. at ¶ 12.) The Court finds that neither of these February 9th communications gives rise to the existence of a confidential relationship. In fact, the February 9th email itself evidences that Plaintiff knew it had not yet finalized any agreement to retain Dr. Quivik as its expert. Dr. Quivik's phone call declining the proposed contract likewise goes to show that no confidential relationship had yet been formed between he and Plaintiff.

The Court has also reviewed the letters exchanged between counsel subsequent to February 9, 2015. Having done so, the Court finds they do not, even in light of all of the communications taken together, show the existence of a confidential relationship between Plaintiff and Dr. Quivik. (Dkt. 87, Ex. 2.) While counsel for Plaintiff may have intended to and wanted to retain Dr. Quivik as its expert, no confidential relationship was formed here. Indeed, Plaintiff's February 9, 2015 email to Dr. Quivik evidences that Plaintiff had not yet secured Dr. Quivik as its expert.

As to the other factors to consider on in this first step of the analysis, again, there was no formal confidentiality agreement. There were only a limited number of contacts between Dr. Quivik and Plaintiff's counsel over the course of six days in February of 2015. Only one of those contained any substantive discussion. There has not been a sufficient showing that

**MEMORANDUM DECISION AND ORDER- 9**

Plaintiff's counsel discussed any work product and no documents were provided to Dr. Quivik from Plaintiff's counsel. Moreover, Plaintiff's counsel did not tell Dr. Quivik the information discussed in the communications was confidential nor was he asked to agree not to discuss the case or any information from their conversations with the opposing parties or counsel. Additionally, Dr. Quivik was not paid any fee by Plaintiff. The Court has also considered the fact that the defense has retained Dr. Quivik in this case but, based on the reasons stated in this Order, does not find that he should be disqualified as an expert.

Based on the foregoing, the Court finds that Plaintiff has failed to satisfy its burden to show that a confidential relationship existed between it and Dr. Quivik. The Motion is denied on this basis. Regardless, the Court will discuss the other step in the analysis as well as the policy factors.

**2)      Disclosure of Confidential Information**

Assuming a confidential relationship had been made, the second step in the inquiry has the Court consider whether confidential information was disclosed to Dr. Quivik. Confidential information is information which is "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Hewlett-Packard*, 330 F.Supp.2d at 1093. Confidential information can include discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." *Id.* at 1094. The party seeking to disqualify an expert must point to specific and unambiguous disclosures that

**MEMORANDUM DECISION AND ORDER- 10**

if revealed would prejudice the party. *Id.*

Plaintiff here has not pointed to any specific and unambiguous disclosures that were revealed and would be prejudicial to it. The general statement that Plaintiff's counsel disclosed "thoughts, mental impressions, and concerns about various aspects of the case, including the identity of Plaintiff's other retained experts and the types of services they were performing" is insufficient to meet the Plaintiff's burden here. *Id.* At best Plaintiff's counsel may have revealed the identity of one of its experts and perhaps some general thoughts about the case. The record does not, however, support a finding that Plaintiff's counsel provided work-product or privileged information or confidential information of any particular significance. In fact, Dr. Quivik's Declaration rebuts any disclosure of confidential information during his contacts with Plaintiff's Counsel. (Dkt. 88, Quivik Dec.)

Based on the foregoing, the Court concludes that no confidential information was disclosed or revealed to Dr. Quivik in any of the communications between he and Plaintiff's counsel.

### 3)      Other Policy Factors and Considerations

In deciding whether to disqualify an expert, courts also consider issues of fundamental fairness and whether any prejudice might occur if an expert is or is not disqualified. *Hewlett–Packard*, 330 F.Supp.2d at 1094-95. Additional policy considerations include achieving the goal of protecting the integrity of the adversary process and promoting public confidence in the legal system. *Id*. Courts should consider the parties' strategic positions, allowing experts to pursue their trade, and permitting parties to select their own experts. *Id.*

MEMORANDUM DECISION AND ORDER- 11

The Court has weighed these other policy factors and consideration and concludes that disqualification in this case is not warranted. Because there was no confidential relationship formed between the Plaintiff and Dr. Quivik and no disclosure of confidential information, Plaintiff is not prejudiced by Dr. Quivik working for Defendants. It would, however, be fundamentally unfair and prejudicial to the defense to disqualify Dr. Quivik as a defense expert in this case. For these same reasons, the Court finds the integrity of the adversary process and public confidence in the legal system are protected by denying the Motion in this case.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Disqualify (Dkt. 86) is **DENIED**.



DATED:  **September 9, 2015**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER- 12**